**UNITED STATES of America, Appellee,**

v.

**Raymond James NELSON, Appellant.**

**No. 91–3865.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1992.

Decided July 15, 1992.

Rehearing and Rehearing En Banc
Denied Aug. 19, 1992.

Thomas O'Flaherty, Cedar Rapids, Iowa, argued, for appellant.

Kandice A. Wilcox, Cedar Rapids, Iowa, argued, for appellee.

Before BOWMAN and BEAM, Circuit Judges, and LARSON,* Senior District Judge.

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

LARSON, Senior District Judge.

Raymond James Nelson appeals his four convictions for distribution of and conspiracy to distribute cocaine and methamphetamine. Nelson alleges that the prosecutor violated due process and violated the Jencks Act by withholding evidence until after trial, and that the district court[1] erred in refusing to allow post-trial evidence that prosecution witnesses committed perjury at trial. Nelson also contends that there was insufficient evidence to support the jury verdict on all counts. We affirm.

## I.

The government presented four witnesses to establish its case. The witnesses were James Knock and Claude Miller, both immunized from prosecution, and two police officers. The defense did not call any witnesses. Prosecution witness James Knock entered into a plea agreement, pleading guilty to drug trafficking and agreeing to cooperate with the government. In March, May, and June of 1992, Knock made controlled purchases of cocaine and methamphetamine from Nelson. In each instance, Knock first met with federal agents who searched Knock and his vehicle, gave Knock money with which to purchase controlled substances, and fitted Knock with an electronic listening device. On each occasion, Knock was followed by agents as he went directly to Nelson's home and purchased controlled substances. Immediately after leaving Nelson's home, Knock gave the substances and the remaining money to the agents. No audio tapes were offered by the government at trial because of poor sound quality. Testimony was offered at trial that surveillance officers, parked approximately one half mile from Nelson's home, found it difficult to understand Knock and Nelson's conversations over the listening device, and found it difficult to watch Knock's actions after his vehicle entered Nelson's yard.

At trial, the defense requested, pursuant to the Jencks Act, all statements previously made by Knock. On cross-examination Knock admitted to drug dealing activities, engaging in extensive deceit in furtherance of those activities, cooperating with the government in order to avoid prison, personal drug use in violation of his plea agreement, and failing to report income from the sale of drugs on his income tax forms. Upon further inquiry into the plea agreement, Knock indicated that he had taken a polygraph test. At a side bar conference the prosecutor stated that he was unaware of any such test, but was willing to search the files for further information. Defense counsel did not pursue the matter further. After trial, a police report summarizing Knock's polygraph examination was located and made available to defense counsel. The examination had been conducted at the request of federal agents to discover whether Knock was intentionally deceiving them. The report was largely consistent with Knock's trial testimony, but divergent with regard to certain particulars. First, Knock testified at trial that he had previously purchased 25 to 40 ounces of methamphetamine from Nelson and Nelson's brother, but stated in a pre-polygraph interview that he had previously purchased only 6 to 8 ounces. Second, Knock indicated during the polygraph examination that he had not filed income tax returns for a long time.

Prosecution witness Claude Miller testified on cross examination that he sold $200 to $300 worth of drugs over a five year period. In the discovery file, however, and available to the defense, was a statement by Terry Mau indicating that Miller had sold significantly more drugs to Mau.

Nelson's motion for new trial or, in the alternative, for an evidentiary hearing, was denied by the district court.

## II.

### A. *Due Process Violation*

██ Nelson contends that the prosecution's failure to disclose the police sum-

1. The Honorable David R. Hansen was a United States District Judge for the Northern District of Iowa at the time judgment was entered. He was appointed to the United States Court of Appeals for the Eighth Circuit on November 18, 1991.

mary of Knock's polygraph examination requires a reversal under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* requires disclosure of all material evidence favorable to the accused, whether impeachment or exculpatory evidence, in the possession of the United States. *Brady*, and it progeny, make clear that constitutional error is committed only where the omitted evidence would create a reasonable doubt about guilt that would not otherwise have existed. A finding of materiality of the evidence is required.

The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *United States v. Wayne*, 903 F.2d 1188, 1192 (8th Cir.1990). Further, "the availability of other opportunities to elicit the same information on cross-examination is sufficient in determining whether a Defendant's constitutional rights have been violated." *United States v. Klauer*, 856 F.2d 1147, 1149 (8th Cir.1988) (discussing the confrontation clause).

Here, Nelson claims that the unavailability of the impeachment evidence denied him the opportunity to effectively cross-examine Knock and to undermine Knock's credibility. Specifically, Nelson argues that his defense at trial was that Knock was double-crossing the police, setting up Nelson and stealing the government's money, and that the undisclosed report would have supported that defense, thus creating a reasonable doubt about guilt. We disagree.

Most of the information contained in the report was fully elicited and developed by the defense during extensive cross-examination of Knock. Any additional, possible benefit which may have been gleaned from the report is not sufficient to undermine our confidence in the outcome of the trial. Further, the two areas of alleged inconsistency in Knock's testimony are inadequate to convince us that the trial result would have been different had Knock been impeached. The inconsistency as to the amount of drugs previously purchased is relevant only in terms of general credibility, as it does not relate in any way to the three controlled purchases at issue. As to Knock's filing of income tax returns, the defense clearly established at trial that Knock lied to the government each and every time he failed to report his income from drug related activities. The impeachment evidence would have been merely cumulative. The district court did not abuse its discretion in denying Nelson's motion for a new trial based upon the nondisclosure of Knock's prior statements.

We find no basis upon which to reverse the district court's well-reasoned opinion, however, we do agree that the police report should have been disclosed. While the good faith or the bad faith of the government is of no consequence to the due process violation under *Brady*, we hasten to warn the government that any lack of straightforwardness in the non-disclosure of information to which the defense is clearly entitled will not be tolerated.

### B. *Jencks Act Violation*

■ Title 18 U.S.C. § 3500(b) mandates that the government disclose statements previously made by a government witness which relate to that witness' testimony on direct examination. Again, Nelson contends that the police report concerning Knock's polygraph examination would have been indispensable to the defense. Again, we disagree.

While the statutory language requires disclosure, we cannot reverse the jury verdict absent a showing of prejudicial error. Whether or not the report is a statement within the meaning of the Jencks Act, an issue we need not reach, Nelson has not shown any prejudice whatsoever. The fact that Knock had taken a polygraph examination was first discovered by both parties at trial, during cross-examination. The defense was not deprived of any facts otherwise known to the prosecution, and effective cross-examination was not unfairly foreclosed. The evidence was cumulative

and the district court's decision was not an abuse of discretion.

### C. *Perjury By Witnesses*

■ Nelson asserts that both Knock and Miller committed perjury when they testified and, further, that the government had knowledge of the perjury but allowed it to stand uncorrected. The government may not "introduce or elicit testimony known to be false," *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959), "or allow false testimony to stand uncorrected," *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. White*, 724 F.2d 714 (8th Cir.1984). However, no constitutional violation occurs when the government has no reason to believe that the testimony was false. *See White* at 717 (citing *United States v. Sutherland*, 656 F.2d 1181, 1203 (5th Cir.1981), *cert. denied*, 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982)). In order to obtain a new trial based upon the allegation of the use of perjured testimony, Nelson must prove: 1) that the prosecution's case includes perjured testimony, 2) that the prosecution knew or should have known of the perjury, and 3) that there was a reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (citations omitted). Nelson's argument with respect to both witnesses fails under the very first element. The only showing made by Nelson is that Miller's statement may have been contradicted by another witness. And while Knock's statements are not entirely consistent, mere inconsistency is not necessarily equated with perjury and every contradiction may not be material. *See United States v. Payne*, 940 F.2d 286, 291 (8th Cir.1991). Nelson has not established in fact that either witness's statements were perjurious and, further, has not established that the government knew or should have known that the statements constituted perjury.

The district court did not abuse its discretion in denying Nelson's motion for a new trial or, in the alternative, for an evidentiary hearing, based upon the alleged perjured testimony of prosecution witnesses.

### D. *Insufficient Evidence*

■ Finally, Nelson contests the sufficiency of the evidence in support of the jury's verdict. This court must determine whether, viewing the evidence in the light most favorable to the government, there is substantial evidence to support the jury's verdict. *United States v. Wesley*, 798 F.2d 1155 (8th Cir.1986). All permissible inferences to be drawn from the evidence must be construed in the government's favor. *United States v. Casperson*, 773 F.2d 216 (8th Cir.1985). In this case, where the alleged errors all hinge upon the credibility of two witnesses, it is particularly important to note that decisions regarding the credibility of witnesses are to be resolved in favor of the jury's verdict. It is for the jury, not a reviewing court, to evaluate the credibility of witnesses and to weigh their testimony. *United States v. Mallen*, 843 F.2d 1096 (8th Cir.1988) (citations omitted). The substantial evidence presented through Knock was corroborated by two police officers and by Miller. We find that the evidence presented at trial clearly supports the verdict on all four counts.

### III.

We find that the district court did not abuse its discretion in denying in its entirety Nelson's motion for a new trial or, in the alternative, for an evidentiary hearing. Further, we find that the Jencks Act was not violated. The decision below is therefore affirmed.