59 F.3d 767
 42 Fed. R. Evid. Serv. 853
 UNITED STATES of America, Plaintiff-Appellee,
v.
Sidney L. MARTIN, also known as Sidney Laroy Martin, also
known as Sidney Leroy Martin, also known as Sid
Leroy Martin, also known as Big Sid,
also known as Sid, Defendant-Appellant.
 No. 94-1321.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 10, 1995.
Decided July 13, 1995.
Rehearing Denied Oct. 4, 1995.
 
 Charles A. Parmenter, St. Louis, MO, argued, for appellant.
 Lajuana M. Counts, Kansas City, MO, argued (Stephen L. Hill, Jr., as U.S. Atty., on the brief), for appellee.
 Before BOWMAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 JOHN R. GIBSON, Senior Circuit Judge.
 
 
 1
 Sidney Martin appeals his convictions for the manufacture and possession of firearms (molotov cocktails) without a license in violation of 26 U.S.C. Secs. 5861(f) and 5871 (1988), and for the possession of unregistered firearms in violation of 26 U.S.C. Secs. 5861(d) and 5871 (1988). He raises three arguments: (1) the district court[1] erroneously admitted hearsay testimony as an excited utterance; (2) the prosecution knowingly introduced perjured testimony; and (3) he received ineffective assistance of counsel. We affirm.[2]
 
 
 2
 According to Krishan Hunter, a witness for the prosecution, Martin called him at his home on March 29, 1993, and demanded $1000 because Martin had "lost some money gamblin' that night." Hunter further testified that Martin said he "would do something bad to [Hunter's] family's house" if Hunter didn't give Martin the money. Hunter stated that he told his mother about the telephone call and that she told his stepfather.
 
 
 3
 Daniel Wroten, Hunter's stepfather, told a slightly different story. He testified that Hunter came to Wroten's bedroom that morning "acting like he was looking for somebody." Wroten asked Hunter what was wrong and Hunter told him that a guy was after him who wanted to take his money. Hunter left Wroten's room, but returned shortly. Hunter then told Wroten that Hunter had won money gambling and that somebody was trying to take the money. Wroten stated that Hunter saw Martin coming to the door and acted scared. Wroten went downstairs to answer the door, and Hunter stayed upstairs. Wroten testified that Martin told him that Hunter owed Martin $3200, but that Martin would settle for $1500. Wroten then testified that Martin left, but said that he would be back. Wroten stated that while he was downstairs and Hunter was upstairs, Hunter got a phone call. Wroten testified that Hunter then said that "Big Sid gonna' burn the house down."
 
 
 4
 Shortly thereafter, Hunter saw Martin in Hunter's neighbor's backyard with a red gasoline container and a white plastic sack full of bottles. Hunter saw Martin pouring gasoline into the bottles, then ripping his shirt and placing parts of it into the gasoline-filled bottles. As Hunter watched from upstairs, Wroten testified that Hunter told Wroten, who was still downstairs, that Martin had a gas can and "was makin' some bomb to throw in the house. Makin' some, you know, put--he didn't say a bomb. He's makin'--puttin' some--." The trial court admitted Wroten's testimony regarding Hunter's statements under the excited utterance exception to the hearsay rule. Fed.R.Evid. 802, 803(2).
 
 
 5
 Someone called the police. Martin was arrested, tried, convicted, and timely appealed.
 
 
 6
 Martin first argues that the district court erred in admitting hearsay testimony from Wroten, describing Hunter's statements following the phone call and during the ensuing events. The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Hearsay is inadmissible unless it falls under one or more exceptions. Fed.R.Evid. 802. One such exception is for an excited utterance, that is, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed.R.Evid. 803(2). In determining admissibility under this exception, "we must consider the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement." United States v. Moses, 15 F.3d 774, 777-78 (8th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 2691, 129 L.Ed.2d 822 (1994). We review the admission of this evidence only for abuse of discretion. United States v. Iron Shell, 633 F.2d 77, 86 (8th Cir.1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).
 
 
 7
 The district court did not abuse its discretion by admitting Wroten's hearsay testimony as an excited utterance.[3] According to Wroten, Hunter related his telephone conversation with Martin immediately after it occurred, and described Martin's ensuing actions as they were happening. At the time of the incident, Hunter was sixteen. Wroten observed Hunter to be "scared" and "nervous." The fear which a threat like Martin's would engender cannot be discounted. See id. at 86 (considering the "stress and fear" created by a sexual assault upon a young girl). That Hunter's statements responded to a question does not render them inadmissible. See Iron Shell, 633 F.2d at 86 (asking "what happened" does not destroy the requisite excitement under Rule 803(2)). The record reveals that Wroten asked Hunter only what was wrong, and then only the first time Hunter came into Wroten's room.
 
 
 8
 At the time the district court admitted Wroten's testimony, Hunter had not yet testified. Any question concerning Hunter's veracity or the accuracy of his statements to Wroten could have been, and likely was, resolved when Hunter testified. For example, on redirect examination, Hunter reiterated that Martin came to Hunter for money because Martin had lost money gambling. However, Hunter added that Martin also sought the money because Hunter had completed a drug scam which was to involve both Hunter and Martin.[4]
 
 
 9
 Furthermore, other record evidence supports Martin's conviction. For example, a police fingerprint examiner identified Martin's fingerprints on one of the seized molotov cocktail bottles, and a gasoline station attendant testified that a person fitting Martin's description bought a gas can full of gasoline on the date and near the approximate time of the offense. Under these circumstances, we are convinced that if there was error in admitting the hearsay, it was harmless and, in light of the substantial evidence against Martin, "did not influence the jury or had a very slight effect." Id. at 87; United States v. Mitchell, 31 F.3d 628, 632 (8th Cir.1994).
 
 
 10
 Martin also argues that his due process rights were violated because the government knowingly introduced and failed to correct perjurious testimony from Hunter. Martin alleges Hunter perjured himself three times: (1) by testifying that the money involved was gambling proceeds, rather than proceeds from a drug scam involving Martin and Hunter; (2) by testifying that Wroten looked out the window and saw Martin; and (3) by stating that Hunter gave police no information regarding the alleged drug scam.
 
 
 11
 The prosecution may not use or solicit false evidence, or allow it to go uncorrected. Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). To prove prosecutorial use of false testimony, Martin must show that: (1) the prosecution used perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a "reasonable likelihood" that the perjured testimony could have affected the jury's judgment. United States v. Nelson, 970 F.2d 439, 443 (8th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992). "Mere inconsistency" between witnesses' testimony is not necessarily perjury, and not every contradiction is material. Id. "[A] challenge to evidence through another witness or prior inconsistent statements [is] insufficient to establish prosecutorial use of false testimony." United States v. White, 724 F.2d 714, 717 (8th Cir.1984) (per curiam) (citing with approval United States v. Sutherland, 656 F.2d 1181, 1203 (5th Cir.1981), cert. denied, 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982)).
 
 
 12
 Here, Martin has failed to prove that Hunter perjured himself. Martin contends that Hunter testified that the monies involved were gambling proceeds when they actually derived from a drug scam. However, the record cited does not support Martin's contention. Hunter testified that Martin told him that Martin lost money gambling and needed one thousand dollars. Wroten testified that Hunter initially told him that Hunter won money gambling. However, Hunter's prior inconsistent statement to Wroten is insufficient to show prosecutorial misconduct, as is Wroten's testimony regarding that statement. White, 724 F.2d at 717. Furthermore, when Hunter testified on redirect that Martin was demanding the money due to his gambling loss, the prosecution specifically questioned whether "there [were] any other reasons that he might've felt that you owed him the money?" Hunter then testified about the drug scam. That Martin sought money from Hunter to cover his gambling losses is not inconsistent with Martin's belief that Hunter owed Martin money from the scam.
 
 
 13
 Likewise, the record Martin cites does not show any inconsistency, let alone perjury, in Hunter's testimony that Wroten looked out the window that morning. Wroten testified that he did not look out the window downstairs. Hunter testified that Wroten looked out the window upstairs.
 
 
 14
 At most, Martin shows an inconsistency between Hunter's testimony that he gave no information regarding the alleged drug scam to police officers and the officers' testimony that he did. However, Hunter never denied to the officers or at trial that the scam occurred. At trial, Martin's counsel questioned one of the officers at length regarding the inconsistency of Hunter's stories. Considering the circumstances of this case, Martin's challenge to Hunter's testimony through the officer and through Hunter's own inconsistencies is insufficient to establish prosecutorial use of perjured testimony. See Nelson, 970 F.2d at 443.
 
 
 15
 Even assuming Hunter perjured himself, Martin has failed to prove that the prosecution knew or should have known that the testimony was false or that, without the testimony, the jury might have come to a different decision. See United States v. Runge, 593 F.2d 66, 73-74 (8th Cir.), cert. denied, 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979). In short, Martin has not shown any prosecutorial misconduct affecting his due process rights.
 
 
 16
 Finally, Martin argues ineffective assistance of trial counsel. Martin claims two errors: (1) counsel allegedly refused a plea bargain offer without informing Martin; and (2) counsel failed to argue the above alleged perjuries in a motion for new trial. Because this issue normally involves facts outside the original record, it is more appropriately raised in collateral proceedings under 28 U.S.C. Sec. 2255 (1988) than on direct appeal. United States v. Gallegos-Torres, 841 F.2d 240, 242-43 (8th Cir.1988). This rule applies except in "exceptional cases where the obvious result would be a plain miscarriage of justice or inconsistent with substantial justice." Kelley v. Crunk, 713 F.2d 426, 427 (8th Cir.1983) (per curiam). Martin raised no claim of ineffective assistance of counsel in the district court, and the record is undeveloped. No miscarriage of justice would obviously result, and, therefore, we affirm the judgment of conviction without prejudice to Martin's right to raise his claim in collateral proceedings. See United States v. Dubray, 727 F.2d 771, 772 (8th Cir.1984).
 
 
 17
 We affirm Martin's conviction.
 
 
 
 [1]
 The Honorable Elmo B. Hunter, United States Senior District Judge for the Western District of Missouri
 
 
 [2]
 Martin moved this court for leave to file a pro se supplemental brief. The motion was ordered to be considered by the panel which disposed of the case on its merits. Because "it is Eighth Circuit policy to refuse to consider pro se filings when a party is represented by counsel," Hoggard v. Purkett, 29 F.3d 469, 472 (8th Cir.1994), we deny Martin's motion
 
 
 [3]
 The statements are arguably also admissible as present sense impressions under Federal Rule of Evidence 803(1), which excepts from the hearsay rule statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." See United States v. Earley, 657 F.2d 195, 198 (8th Cir.1981). We do not reach this issue, as we find the statements properly admissible under Rule 803(2)
 
 
 [4]
 Hunter testified that he devised a drug scam and asked Martin to participate. In essence, Hunter promised a third individual four ounces of crack in exchange for $4,400. Martin was supposed to go with Hunter to get the money, but did not do so. Hunter took the $4,400, never delivered the crack, and kept the money for himself