# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-3417

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Northern |
| Catherine Papajohn, | * | District of Iowa. |
| | * | |
| Appellant. | * | |

_____

Submitted: February 15, 2000

Filed: May 9, 2000

_____

Before WOLLMAN, Chief Judge, and HANSEN and MORRIS SHEPPARD
ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Catherine Papajohn was convicted on one count of conspiracy to commit arson
and mail fraud, *see* 18 U.S.C. § 371, one count of aiding and abetting arson, *see* 18
U.S.C. § 844(i), and two counts of mail fraud, *see* 18 U.S.C. § 1341. Ms. Papajohn

appeals her convictions, arguing that the trial court[1] should have granted her motions for a judgment of acquittal or a new trial. We affirm.

## I.

Ms. Papajohn and her husband, Donald Lee Earles, were suspected of burning down their convenience store for the purpose of obtaining insurance proceeds. A grand jury was convened, before which Mr. Earles's son, Donald Scott Earles (Donnie), testified three times. During Donnie's first grand jury appearance, he stated that he did not know who burned down the convenience store. During Donnie's second grand jury appearance, he changed his story, stating that Ms. Papajohn and Mr. Earles conspired to burn down the convenience store for the insurance money. During Donnie's third grand jury appearance, he claimed his fifth amendment right to remain silent and refused to testify.

At the subsequent trial of Ms. Papajohn and Mr. Earles, Donnie again refused to testify. The trial court declared Donnie an unavailable witness, *see* Fed. R. Evid. 804(b)(1), and allowed the government, over the objections of the defense, to read to the jury portions of the transcripts from all three of Donnie's appearances before the grand jury. The trial jury convicted both defendants.

After trial, the defendants moved for a judgment of acquittal or, in the alternative, for a new trial. The trial court denied the motions for a new trial, but granted the motions for a judgment of acquittal and vacated the convictions. On appeal by the government, we reinstated the convictions. *See United States v. Earles*, 113 F.3d 796, 802 (8th Cir. 1997), *cert. denied*, 522 U.S. 1075 (1998).

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, who presided over the case after the verdicts but before the motions at issue in this appeal.

Donnie subsequently made a sworn statement that he did not know who was responsible for the fire and recanted his grand jury testimony inculpating Ms. Papajohn and Mr. Earles. The defendants moved again for a new trial, based on this "newly discovered evidence," *see* Fed. R. Crim. P. 33. The trial court denied their motions, *see United States v. Earles*, 983 F. Supp. 1236, 1258 (N.D. Iowa 1997), and we dismissed the defendants' subsequent appeal on the ground that it was premature, *see United States v. Earles*, 162 F.3d 1165, 1998 WL 391185, at \*\*1 (8th Cir. 1998) (*per curiam*).

At the sentencing hearing for Ms. Papajohn, Donnie testified that he knew nothing about the fire. After Donnie gave this testimony, Ms. Papajohn's lawyer informed the court that during an earlier break in the hearing, Donnie had spoken to Mr. Earles's lawyer and had confessed to causing the fire himself. Ms. Papajohn and Mr. Earles then moved again for a new trial. The trial court held an evidentiary hearing on the motions, at which the lawyers for both Ms. Papajohn and Mr. Earles stated that Donnie had confessed to the crime. Donnie, however, did not testify at the hearing. The trial court denied the defendants' motions and sentenced Ms. Papajohn to 27 months' imprisonment.

On appeal, Ms. Papajohn contends that she should have been given a new trial because the government knew or should have known that it used perjured testimony at the trial, because Donnie's recantation and admission of personal guilt were sufficient "newly discovered evidence" to require a new trial, because of the Supreme Court's recent decision in *Lilly v. Virginia*, 527 U.S. 116, 119 S. Ct. 1887 (1999), and because of various alleged errors that occurred at the trial, including prosecutorial misconduct and the improper admission of evidence.

II.

Ms. Papajohn argues that the trial court should have granted her motion for a new trial on the ground that the government knowingly presented false testimony,

namely, the testimony from Donnie's second grand jury appearance. To prove that the government's use of false testimony violated her right to due process, Ms. Papajohn must show that "(1) the prosecution used perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a 'reasonable likelihood' that the perjured testimony could have affected the jury's judgment." *United States v. Martin*, 59 F.3d 767, 770 (8th Cir. 1995), quoting *United States v. Nelson*, 970 F.2d 439, 443 (8th Cir. 1992), *cert. denied*, 506 U.S. 903 (1992).

The trial court found that Ms. Papajohn failed to show that the government knew or should have known that Donnie's testimony was perjured and therefore that Ms. Papajohn failed to satisfy the second element of the *Martin* test. We review the trial court's denial of a motion for a new trial for an abuse of discretion. *See United States v. Grey Bear*, 116 F.3d 349, 350 (8th Cir. 1997).

Ms. Papajohn contends that the government knew or should have known that Donnie's testimony was perjurious for two reasons. She argues first that the government knew that Donnie had failed a polygraph examination in which he recounted the same facts incriminating Ms. Papajohn as those in his later testimony before the grand jury. An examination of the transcript of the polygraph session, however, reveals that the polygraph examiner did not find that everything that Donnie stated during the session was false. The polygraph examiner found, instead, that Donnie had not told the complete truth and that he was holding something back. Although this assessment certainly provided the defense with material to impeach Donnie, it does not show that Donnie's testimony incriminating Ms. Papajohn was false, and it is therefore not enough to show that the government knew that Donnie's testimony was perjurious. *See Martin*, 59 F.3d at 770.

Ms. Papajohn also contends that Donnie expressed misgivings about the testimony that he gave at his second grand jury appearance shortly before Ms. Papajohn's trial. We note, however, that although he stated at that time that he was

"pressured" by the government, he never stated that he lied. Even if he had recanted his earlier testimony, moreover, there is no indication that his misgivings were so pervasive that the government knew or should have known at that point that Donnie's grand jury testimony was false. At most, Donnie's subsequent conflicting statements would allow the defense to attack his credibility. *See United States v. Perkins*, 94 F.3d 429, 433 (8th Cir. 1996), *cert. denied*, 519 U.S. 1136 (1997) ("[w]hile no party is permitted to put on testimony that it knows or should know to be untrue, it is not improper to put on a witness whose testimony may be impeached").

## III.

Ms. Papajohn also asserts that the trial court should have granted her motion for a new trial on the ground of "newly discovered evidence," namely, Donnie's recantation of his incriminating grand jury testimony, and the subsequent statements by the lawyers for Ms. Papajohn and Mr. Earles alleging that Donnie confessed to starting the fire himself. Motions for a new trial based upon the alleged recantation of a material witness are viewed with disfavor in this circuit and are difficult to win. *See Grey Bear*, 116 F.3d at 350. The scope of our review of motions for a new trial on these grounds is narrow, and a denial by the trial court should be reversed only if there is a " '*clear abuse of discretion.*' " *Grey Bear*, 116 F.3d at 350, quoting *United States v. Coleman*, 460 F.2d 1038, 1040 (8th Cir. 1972) (*per curiam*), *cert. denied*, 409 U.S. 871 (1972) (emphasis in *Grey Bear*).

To receive a new trial a movant must show, among other things, that the newly discovered evidence is of such a nature that, in a new trial, " 'the newly discovered evidence would probably produce an acquittal.' " *United States v. Provost*, 969 F.2d 617, 620 (8th Cir. 1992), *cert. denied*, 506 U.S. 1056 (1993), quoting *United States v. Pope*, 415 F.2d 685, 691 (8th Cir. 1969), *cert. denied*, 397 U.S. 950 (1970). A trial court faced with a motion for a new trial must first determine "whether the newly discovered evidence is credible," *Grey Bear*, 116 F.3d at 350. In making the preliminary credibility determination, the question "is not whether the district judge

believe[s] the recantation, but how likely the district judge [thinks that] a jury at a second trial would be to believe it." *Id.*

In this case the trial court concluded that no reasonable jury would believe either Donnie's recantation of his grand jury testimony or his alleged confession to starting the fire himself. The trial court set forth its reasons for reaching this conclusion in exquisite detail over the course of two written orders, and, particularly in light of the highly deferential standard of review, our examination of the record reveals no reason to disturb the trial court's assessment. Having found that Ms. Papajohn failed to meet the threshold requirement that the newly discovered evidence be credible, the trial court denied Ms. Papajohn's motion, holding that she failed to make the required showing that the evidence would probably produce an acquittal, and properly so.

Ms. Papajohn points out that the trial judge, after hearing Donnie's recantation of the incriminating grand jury testimony, stated in open court that "no version [of the events] that [Donnie] would give would be credible ... because he lacks the ability to tell truth from fiction." Ms. Papajohn suggests that although this evaluation of Donnie's credibility would lead to the conclusion that Donnie's recantation was not reliable, it would necessarily also lead to the conclusion that Donnie's earlier grand jury testimony incriminating Ms. Papajohn was not reliable either.

We think that Ms. Papajohn assigns too much meaning to an off-the-cuff, oral remark by the trial court. Our review of the trial court's written order indicates that the court's analysis focused on whether Donnie's recantation and confession were credible, not on whether he lacked generally the ability to discern the truth. The trial court emphasized, for example, that Donnie's incriminating grand jury testimony was supported by extrinsic evidence, while his recantation was not. The trial court also noted that Donnie made his subsequent confession only after he indicated a belief that the statute of limitations had run on the charge of arson. There is no written finding that Donnie is not or was never credible as a general matter, and we think that it is the

court's written findings that we are obligated to review: They were made after ample time to reflect on the testimony, and we consider them to have superseded whatever oral musings had gone before. The trial court properly denied the motion for a new trial on the ground of newly discovered evidence.

IV.

Ms. Papajohn argues next that she should be granted a new trial on the basis of *Lilly*, 527 U.S. at 116, 119 S. Ct. at 1887. In *Lilly*, 119 S. Ct. at 1901, the Supreme Court held that the admission of a nontestifying accomplice's confession violated the defendant's right to confront his accuser. Ms. Papajohn contends that *Lilly* invalidates our earlier conclusion that Donnie's grand jury testimony was admissible under the residual hearsay exception of what is now, after renumbering, Fed. R. Evid. 807. *See Earles*, 113 F.3d at 800-01. We found, among other things, that the grand jury testimony satisfied the requirement of Fed. R. Evid. 807 that the proffered evidence have " 'equivalent circumstantial guarantees of trustworthiness,' " *Earles*, 113 F.3d at 799, quoting Fed. R. Evid. 807.

The government violates the confrontation clause when it seeks to have an unavailable declarant's hearsay statements admitted into evidence, except "when (1) 'the evidence falls within a firmly rooted hearsay exception' or (2) it contains 'particularized guarantees of trustworthiness' such that adversarial testing would be expected to add little, if anything, to the statements' reliability." *Lilly*, 119 S. Ct. at 1894, quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). In *Lilly*, 119 S. Ct. at 1894, the Virginia Supreme Court had found that the unavailable declarant's statement was admissible as a statement against penal interest, which was a firmly rooted hearsay exception in Virginia. The United States Supreme Court, *id.* at 1899 (plurality opinion), held that the portion of the accomplice's testimony sought to be introduced by the state did not fall within a firmly rooted hearsay exception, whatever the rule might be in Virginia.

Although the Virginia Supreme Court did not consider whether the disputed evidence satisfied the alternative standard in *Roberts*, 448 U.S. at 66 (that the statement contained "particularized guarantees of trustworthiness"), a four-justice plurality in *Lilly*, 119 S. Ct. at 1901, considered the matter and found that the accomplice's statement was not sufficiently trustworthy. Ms. Papajohn contends that the analysis of the plurality opinion undermines the rationale that we used in *Earles*, 113 F.3d at 800-01, to conclude that Donnie's grand jury testimony had equivalent circumstantial guarantees of trustworthiness. We disagree.

In the first place, since only four Justices concurred in the part of the opinion on which Ms. Papajohn relies, it does not bind us. *See Barone v. Rich Brothers Interstate Display Fireworks Co.*, 25 F.3d 610, 613 n.4, 614 (8th Cir. 1994), *cert. denied*, 513 U.S. 948 (1994). We think, moreover, that the circumstances in *Lilly* distinguish it from our case. Most significantly, Donnie was not treated as an accomplice of Ms. Papajohn and Mr. Earles. Unlike the accomplice in *Lilly*, 119 S. Ct. at 1900-01 (plurality opinion), Donnie was never arrested or charged with a crime. The obvious incentive that the captured accomplice in *Lilly* had to shift blame is not present in our case.

We recognize that although Donnie was not charged with a crime at the time he made the statements, he might still have had some incentive to blame Ms. Papajohn and Mr. Earles, so that he would not later be charged with the arson. It seems to us, however, that it can almost always be said that a statement made by a declarant that incriminates another person in a crime will make it less likely that the declarant will be charged for that crime. The extent to which this fact renders the declarant's statement untrustworthy is a matter of degree, and we think that it has not been shown that the clear incentive for the accomplice in *Lilly* to lie is present here.

We also find that the conditions under which the disputed hearsay statement was made in our case differ significantly from those in *Lilly*. In *Lilly*, 119 S. Ct. at 1892,

1894 (plurality opinion), the accomplice's statements were made in response to leading police questions, asked during a custodial interrogation that took place very late at night, shortly after his arrest. These conditions were found by the Court, *id.* at 1901 (plurality opinion), to militate against finding that the accomplice's statements were inherently reliable.

In our case, on the other hand, Donnie's testimony was given in a formal proceeding, under oath, before a grand jury. Donnie was not in police custody, nor was he charged with any crime, at the time the testimony was given. He was asked non-leading questions by the government, and he answered them with lengthy narratives. Although Ms. Papajohn complains that Donnie's conversation with the polygraph examiner influenced his testimony, the fact remains that Donnie voluntarily submitted his grand jury testimony in response to open-ended questions. We do not believe, given these different circumstances, that *Lilly* requires us to disturb our earlier holding, *see Earles*, 113 F.3d at 800-01.

V.

Ms. Papajohn also seeks a new trial because of various instances of alleged prosecutorial misconduct. We have held that a defendant is entitled to a new trial if improper prosecutorial remarks have " 'prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.' " *United States v. Stands*, 105 F.3d 1565, 1577 (8th Cir. 1997), *cert. denied*, 522 U.S. 841 (1997), quoting *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir. 1985). Ms. Papajohn failed to object to several of the comments about which she now complains, and therefore to reverse her conviction because of those comments, we must find that the error was so prejudicial as to have compromised her substantial rights, " 'resulting in a miscarriage of justice.' " *United States v. Shaw*, 570 F.2d 770, 773 (8th Cir. 1978), quoting *United States v. Big Crow*, 523 F.2d 955, 961 (8th Cir. 1975), *cert. denied*, 424 U.S. 920 (1976).

We specifically address only the strongest of Ms. Papajohn's arguments. She contends, first, that the prosecutor made a number of improper vouchers in favor of the government's case and against the defense's witnesses. We agree that, as a general matter, a prosecutor may not place " 'the prestige of the government behind the witness' by providing 'personal assurances of [the] witness's veracity.' " *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992), quoting *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980). Upon a review of the record, however, we find that the prosecutor merely suggested reasons why the jury might find the government's witnesses to be more credible, and never opined as to the credibility of any expert witnesses. Similarly, the prosecutor's statement that "I believe [that] the evidence is that [Ms. Papajohn is] guilty" was a permissible argument describing the sufficiency of the evidence. *See United States v. Adams*, 799 F.2d 665, 670 (11th Cir. 1986), *cert. denied*, 481 U.S. 1070 (1987) (distinguishing between "I believe that the defendant is guilty," which is an impermissible voucher, and "I believe [that] the evidence has shown the defendant's guilt," which is a permitted argument).

Ms. Papajohn also contends that the prosecutor improperly disparaged both her lawyer and her theory of defense, although she did not object to any of these remarks. With regard to remarks made about her lawyer, we note that at no point did the prosecutor state or imply that her lawyer lied or committed an impropriety. At most, the prosecutor's remarks can be read to suggest that Ms. Papajohn's lawyer misstated facts in closing argument and that the defense's theory of the case was incredible, both of which are permissible arguments. We agree that the prosecutor's statement that "I have nothing personal to gain or not gain from this case" is problematic because it seems to push the prosecutor's personal credibility to the fore. *See United States v. Rosales*, 19 F.3d 763, 767 (1st Cir. 1994). We find that the remark was an isolated one, however, and was not in the least likely to influence the outcome of the case. *See id.* at 767-68.

Nor can we say that the prosecutor's comparison of Ms. Papajohn's defense to the defense used in the O. J. Simpson case, although it might better have been left unexpressed, was inflammatory to a degree that would require a mistrial. Although courts have found that repeated comparisons between the defendant and figures such as Charles Manson, *see Shurn v. Delo*, 177 F.3d 662, 666-67 (8th Cir. 1999), *cert. denied*, 120 S. Ct. 510 (1999), Adolf Hitler, *see Martin v. Parker*, 11 F.3d 613, 615-16 (6th Cir. 1993) (*per curiam*), and Pontius Pilate and Judas Iscariot, *see United States v. Steinkoetter*, 633 F.2d 719, 720-21 (6th Cir. 1980), may warrant relief on appeal, these cases are clearly distinguishable: The comments in our case were fleeting, did not draw a direct comparison between Ms. Papajohn and Mr. Simpson, and, whatever may be said about Mr. Simpson's public stature, surely did not involve a comparably notorious figure.

Ms. Papajohn points to two incidents during the prosecutor's closing rebuttal in which he referred to facts not in evidence. She objected to one of these assertions, and the prosecutor restated his argument to remove the improper remark. We find that this ameliorative step was, in this case, enough to cure any unfair prejudice arising from the statement. *See United States v. Guerra*, 113 F.3d 809, 815-16 (8th Cir. 1997). Ms. Papajohn did not object to the other inappropriate reference, and we find that although the evidence did not support the argument, it did not concern a fact of significance. We note, moreover, that the trial court instructed the jury that the attorneys' arguments were not evidence. Under these circumstances, we do not think that the references to facts not in evidence made any contribution to the proposed finding that a new trial was warranted. *See United States v. Boyce*, 797 F.2d 691, 694-95 (8th Cir. 1986).

Ms. Papajohn also contends that the prosecutor mischaracterized the offer of immunity that was given to Donnie for his testimony at the trial. The prosecutor in this case agreed to give Donnie use immunity for his testimony at trial, which is to say that Donnie's truthful testimony at trial could not later be used against him. We believe that

the prosecutor's statement in closing, namely, that "what [Donnie] stated here in this Court could not be used against him to prosecute him for any other crimes," was accurate. Although it is true that if Donnie had taken the stand and contradicted the testimony he gave at his second grand jury appearance he might be prosecuted for perjuring himself at that grand jury appearance, the government would not be able to use the statements he made on the stand at trial as evidence. The prosecutor never explicitly stated or implied that Donnie was given transactional immunity for his testimony.

Looking at Ms. Papajohn's myriad complaints altogether, we note that "[w]e cannot focus microscopically on the alleged misconduct, but must instead consider its effect on the broader fairness of the whole trial." *United States v. LaFuente*, 54 F.3d 457, 462 (8th Cir. 1995), *cert. denied*, 516 U.S. 902 (1995). Ms. Papajohn's lawyer vigorously contested the case against her, and the trial lasted three weeks, generating a transcript in excess of 3,600 pages. The remarks complained of in this case, many of which were not objected to, were culled from a closing argument that lasted almost an hour and a half. We do not believe that the trial court abused its discretion in declining to find that the unfair prejudice resulting from the above comments, if any, was enough to warrant a new trial.

VI.

Ms. Papajohn next argues that the trial court should have permitted her to cross-examine Donnie after he refused to answer the questions of the prosecutor at trial. We review the trial court's ruling on the proper scope of cross-examination for an abuse of discretion, *see United States v. N.B.*, 59 F.3d 771, 778 (8th Cir. 1995), keeping in mind that a trial court has "considerable discretion to limit the scope and extent of cross-examination," *United States v. Einfeldt*, 138 F.3d 373, 377 (8th Cir. 1998), *cert. denied*, 525 U.S. 851 (1998). The trial court refused to allow cross-examination because Donnie had not answered any questions, and thus there was no subject matter to be cross-examined and no direct testimony to be impeached. It can

hardly be said that the trial court abused its discretion in making this decision. *See* Fed. R. Evid. 611(b) ("[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness").

We note that Donnie's grand jury testimony had not been read to the jury at that point. Ms. Papajohn could subsequently have called Donnie as her own witness if she wanted to question him about whether he was pressured into giving the grand jury testimony, but she did not. We therefore also reject her argument that the trial court wrongly denied her requested jury instruction that she did not have a chance to cross-examine Donnie. At the time a "cross-examination" would have taken place, there was no direct testimony to cross-examine. Once the grand jury testimony was read to the jury, Ms. Papajohn could have called Donnie as a witness and subjected him to direct examination, but she chose not to do so. In any event, we do not believe that any error worked an unfair prejudice against Ms. Papajohn because her lawyer noted Donnie's failure to testify at trial (and, implicitly, the lack of an opportunity for the defense to cross-examine him) at length during the closing argument -- an obviously true observation that would not have significantly benefited from confirmation by the trial court in a jury instruction.

## VII.

Ms. Papajohn argues finally that the trial court erred when it admitted evidence collected from the fire scene by insurance company investigators. A fundamental limitation on the fourth amendment is that it does not reach searches conducted by private actors. *See Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 614 (1989). We disagree with Ms. Papajohn's contention that the insurance company in this case was an arm of the state. We are convinced that the actions of the insurance company in this case were motivated solely by its own financial interests, and that the insurance company was not acting as "an instrument or agent of the Government," *id.*

The government also points out that in her insurance contract Ms. Papajohn agreed to cooperate with the efforts of the insurance company to investigate any claim, including allowing an inspection of the property. In light of that fact, we believe that even if the insurance company were considered to be an arm of the state, Ms. Papajohn consented to the search, and therefore it did not violate the fourth amendment. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

## VIII.

For the foregoing reasons, the decisions of the trial court denying Ms. Papajohn's various motions for a judgment of acquittal or, in the alternative, for a new trial are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.