COLLOTON, Circuit Judge.
This case presents the question whether a prior conviction for delivery of a “simulated controlled substance” under Iowa law qualifies as a “felony drug offense” under a recidivism provision of the Controlled Substances Act, 21 U.S.C. § 802(44). We hold that it does not, and we therefore vacate Dennis Morris *1014 Brown’s sentence and remand for resentencing.
I.
On June 21, 2006, a grand jury indicted Brown for two counts of distributing crack cocaine within 1000 feet of a protected location, in violation of 21 U.S.C. § 860. Before trial, the government filed an information pursuant to 21 U.S.C. § 851, notifying Brown that it intended to seek increased punishment due to Brown’s criminal history. The notice provided that Brown had three prior “felony drug offenses” in Iowa state court, and was therefore subject to a mandatory term of life imprisonment under 21 U.S.C. § 841(b)(1)(A). A felony drug offense is one that “is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.” 21 U.S.C. § 802(44).
Brown’s criminal history includes (1) a 1992 conviction for delivery of a substance that he represented to be methamphetamine but was later determined not to contain any controlled substance; (2) a 1993 conviction for delivery of cocaine; and (3) a 1993 conviction for delivery of a substance that he represented to be cocaine but was later determined not to contain any controlled substance, all three offenses in violation of Iowa Code § 204.401 (subsequently recodified at Iowa Code § 124.401). The first and third offenses involved the delivery of a “simulated controlled substance,” defined under Iowa law as “a substance which is not a controlled substance but which is expressly represented to be a controlled substance, or a substance which is not a controlled substance but which is impliedly represented to be a controlled substance and ... would lead a reasonable person to believe it to be a controlled substance.” Iowa Code § 204.101(27) (1991) (recodified at Iowa Code § 124.101(27) (2007)).[1]
On August 22, 2006, Brown agreed in a written plea agreement to plead guilty to one count of distributing crack cocaine within 1000 feet of a protected location. The government reiterated its intention to seek a sentence of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). Brown reserved the right to challenge whether his two prior convictions for delivery of a “simulated controlled substance” qualified as “felony drug offenses” within the meaning of § 802(44). If those two convictions are not qualifying, then the statute does not require a mandatory term of life imprisonment.
Brown pleaded guilty, and the district court ruled that he was subject to a mandatory term of life imprisonment under § 841(b)(1)(A). The court concluded that the two offenses involving simulated controlled substances qualified as “felony drug offenses.” United States v. Brown, No. *1015 06-CR-1028-LRR, 2007 WL 1498472, *4 (N.D.Iowa May 21, 2007). The court reasoned that the Controlled Substances Act “similarly penalizes the distribution of controlled substances and counterfeit substances,” id. at *3 (citing 21 U.S.C. §§ 841(a)(1), 841(a)(2)), and that “when a defendant delivers a counterfeit controlled substance, many of the dangers and harms to society that are present when ‘the real deal’ is delivered are also present.” Id. The court concluded that the phrase “relating to” in § 802(44) is “very broad and encompasses a wide range of potential conduct.” Id.
II.
On appeal, Brown asserts that his prior convictions for delivery of a simulated controlled substance under Iowa law are not convictions for a “felony drug offense” under 21 U.S.C. §§ 841(b)(1)(A) and § 802(44). There is little authority on this question. The district court here ruled that the convictions qualify; a district court in Virginia held that comparable convictions do not. United States v. Gardner, 534 F.Supp.2d 655, 658-62 (W.D.Va.2008); cf. United States v. Latham, No. 08-1610, 2009 WL 4927964 (6th Cir. Dec.22, 2009) (per curiam)(holding that “[t]he very existence of these two non-binding, contradictory opinions is sufficient to establish, ipso facto, that any error in this case cannot be deemed ‘plain’ because ... any error is not ‘clear under current law’ ”). This court has reserved judgment on the question, United States v. Robertson, 474 F.3d 538, 543 & n. 4 (8th Cir.2007), and we review the district court’s conclusion de novo.
Section 802(44) defines a felony drug offense as “an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.” Brown’s offenses were punishable by more than one year under Iowa law, and the disputed issue is whether delivering simulated methamphetamine or cocaine is an offense that “prohibits or restricts conduct relating to narcotic drugs.” 21 U.S.C. § 802(44) (emphasis added).
The Controlled Substances Act (“CSA”) does not define the phrase “relating to,” and the government argues that the ordinary meaning is a broad one, such that simulating a sale of narcotic drugs is conduct relating to narcotic drugs. In the context of preemption under the Airline Deregulation Act, the Supreme Court stated that “relating to” carries a “broad” meaning — “to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.” Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting Black’s Law Dictionary 1158 (5th ed.1979)). This court has agreed that the phrase “relating to” has a “broad ordinary meaning,” even in the criminal context, when construing a sentencing enhancement for prior offenses “relating to ... abusive sexual conduct involving a minor.” United States v. Weis, 487 F.3d 1148, 1152 (8th Cir.2007) (internal quotation omitted). This breadth has led our court and others to hold that several offenses — all involving actual narcotics— are covered by the definition of “felony drug offense” as one that prohibits or restricts conduct “relating to narcotic drugs.” See United States v. Millard, 139 F.3d 1200, 1209 (8th Cir.1998) (holding that a prior conviction for “sponsoring a gathering with the knowledge that a controlled substance would be distributed” qualified as a felony drug offense because it contained an “element of mental culpability directly related to a drug crime”); United States v. Curry, 404 F.3d 316, 319—20 (5th Cir.2005) (per curiam) (holding that § 802(44) “sweeps broadly enough to in- *1016 elude even strict liability offenses” like possession of marijuana in a penal institution); United States v. Spikes, 158 F.3d 913, 932 (6th Cir.1998) (holding that “relating to” is an “expansive term,” and thus “the statutory phrase ‘felony drug offense’ clearly ... encompasses drug offenses that involve the simple possession of drugs”); United States v. Sandle, 123 F.3d 809, 812 (5th Cir.1997) (holding that an offense for simple cocaine possession without any additional intent element qualified as a “felony drug offense”).
The plain language alone, however, is not sufficient to resolve this case. Even a broad phrase has limits, and our analysis should not stop with the words “relating to” in isolation, for that “would ignore the rule that, because statutes are not read as a collection of isolated phrases, [a] word in a statute may or may not extend to the outer limits of its definitional possibilities.” Abuelhawa v. United States, — U.S. -, -, 129 S.Ct. 2102, 2105, 173 L.Ed.2d 982 (2009) (internal citation and quotation omitted). We must consider the phrase “relating to narcotic drugs” in context. See Fitzgerald v. Barnstable Sch. Comm., — U.S. -, -, 129 S.Ct. 788, 794, 172 L.Ed.2d 582 (2009).
Several considerations lead us to conclude that an offense involving only simulated controlled substances is not an offense that prohibits or restricts conduct relating to narcotic drags within the meaning of § 802(44). To start, the sentencing enhancement appears in a statute that is concerned entirely with the regulation of actual controlled substances. Congress declared in the CSA that “[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people,” 21 U.S.C. § 801(2) (emphasis added), and found that federal control over domestic and foreign traffic of controlled substances was essential. Id. § 801(5), (7) (emphasis added). While the district court is correct that the CSA penalizes offenses involving counterfeit substances (i.e., actual controlled substances that bear an unauthorized trademark, id. § 802(7)), never has Congress regulated simulated or look-alike controlled substances. See United States v. Sampson, 140 F.3d 585, 589 (4th Cir.1998). A reasonable legislator contemplating a sentence enhancement based on prior offenses “relating to narcotic drugs,” in a statute directed exclusively to regulating the traffic of actual narcotic drugs, seems likely to have understood that the class of offenses triggering the enhancement likewise would involve actual narcotic drugs.
The history of the statute supports this inference. When the CSA was first enacted in 1970, the prior convictions that triggered enhanced punishment for repeat offenders were limited to convictions for federal drag offenses, namely, “convictions ... punishable under this paragraph” (i.e., a conviction for manufacturing or trafficking a controlled substance) or felonies “under any other provision of this title [i.e., title II] or title III or other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances.” See Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91-513, § 401, 84 Stat. 1236, 1261 (1970); see also United States v. Gates, 807 F.2d 1075, 1082 (D.C.Cir.1986); United States v. Johnson, 506 F.2d 305, 307 (7th Cir.1974). These offenses all involved actual narcotic drags.
In 1984, Congress amended this language to include prior state and foreign felony drug convictions by inserting the italicized language into the existing statute: “under any other provision of this title or title III or other law of a State, the United States, or a foreign country relat *1017 ing to narcotic drugs, marihuana, or depressant or stimulant substances.” Crime Control Act of 1984, Pub.L. No. 98-473, § 502, 98 Stat. 1837, 2068 (1984) (emphasis added). The relevant legislative history explains that under pre-1984 law, the sentence enhancement was “available only in the case of a prior Federal felony drug conviction,” but that the 1984 amendment “would permit prior State and foreign felony drug convictions to be used for this purpose as well.” S.Rep. No. 98-225, at 258-59 (1984), U.S.Code Cong. & Admin.News 1984, p. 3182. We think the more natural inference for a reasonable legislator in 1984 is that the amendment expanded the enhancement to include state and foreign convictions of the same type as those previously covered under federal law, namely, convictions for offenses involving actual controlled substances. This conclusion is consistent with the use of the shorthand term “felony drug convictions” in the legislative history to summarize criminal provisions “relating to” narcotic drugs and other controlled substances.
In 1988, Congress for the first time added the term “felony drug offense” to 21 U.S.C. § 841(b)(1)(A), defining it as “an offense that is a felony under any provision of this title or any other Federal law that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances or a felony under any law of a State or a foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances.” See Pub.L. No. 100-690, § 6452(a)(2), 1032 Stat. 4181, 4371 (1988). There is no indication that this change expanded the scope of the enhancement provision; if anything the plain meaning of the defined term “drug offense” implies the involvement of actual drugs. Cf. Johnson v. United States, No. 08-6925, 2010 WL 693687, at *6 (U.S. Mar.2, 2010) (holding that “in the context of a statutory definition of ‘violent felony,’ the phrase ‘physical force’ means violent force.”). In 1994, Congress placed the current definition of “felony drug offense” in the “Definitions” section of the CSA, 21 U.S.C. § 802, where it remains today. See Pub.L. No. 103-322, § 90105(d), 108 Stat. 1796, 1987-88 (1994).
The government urges that distributing simulated narcotic drugs in violation of Iowa law is an offense that prohibits or restricts conduct “relating to narcotic drugs,” because one purpose of the Iowa statute is to discourage people from involvement in the actual narcotics trade. By way of example, the government observes that in this case, Brown used funds obtained from the sale of a simulated controlled substance to facilitate trade in actual drugs. To the extent this argument rests on the facts of Brown’s offense conduct, we reject it, for there is no indication in the text or history of the federal statute that a particular state offense might sometimes count toward the sentencing enhancement and sometimes not, depending on the facts of the case. Cf. Taylor v. United States, 495 U.S. 575, 601-02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Drug traffickers may undertake a variety of crimes to facilitate their drug trade — theft, burglary, robbery, or fraud among them— but the factual nexus between a non-drug offense and drug trafficking in a particular case is insufficient to establish that the non-drug offense is “an offense” that restricts “conduct relating to narcotic drugs” within the meaning of § 802(44).
As the dissent points out, there is some overlap in purpose between the Iowa statute, viewed categorically, and the CSA, in that the prohibition on simulated controlled substances may be designed in part to discourage actual drug abuse and drug profiteering. See People v. Hill, 6 Cal.App.4th 33, 8 Cal.Rptr. 123, 128 n. 3 (1992). There may be good policy reasons *1018 to prohibit the sale of simulated controlled substances as part of an effort to combat actual drug trafficking and drug abuse. The fact remains, however, that a person may violate the Iowa statute without ever possessing, distributing, or using a controlled substance and without having any involvement whatsoever with an actual narcotic drug. The question here is whether, for purposes of punishing recidivists under an actual drug trafficking statute, Congress expanded the meaning of “felony drug offense” to include prior offenses that involve no drugs. When the statutory definition is considered in the context of the defined term itself and the drafting history, we think not.
“After seizing everything from which aid can be derived,” Smith v. United States, 508 U.S. 223, 239, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (internal quotations and brackets omitted), we believe the better reading of § 802(44) is that offenses involving simulated controlled substances are not offenses that prohibit or restrict “conduct relating to narcotic drugs.” But if that conclusion is not clear, then the most that we might say for the government’s position is that the statute remains ambiguous. That circumstance would call for invocation of the rule of lenity and a narrower construction of the statute, leading us to the same holding. See United States v. Santos, 553 U.S. 507, 128 S.Ct. 2020, 2025, 170 L.Ed.2d 912 (2008).
For the foregoing reasons, we conclude that Brown’s convictions for delivering simulated controlled substances, in violation of Iowa Code § 204.401 (recodified at § 124.404), do not qualify as “felony drug offenses” within the meaning of 21 U.S.C. § 802(44). As such, Brown is not subject to a mandatory term of life imprisonment under 21 U.S.C. § 841(b)(1)(A). We therefore vacate Brown’s sentence and remand the case for further proceedings. Brown’s motion for leave to file a pro se supplemental brief is denied. See United States v. Martin, 59 F.3d 767, 768 n. 2 (8th Cir.1995).

. The charging documents incorrectly refer to Brown's offenses as delivery of a ''counterfeit” controlled substance, which is defined by Iowa law as a “a controlled substance which ... bears the trademark ... or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person who in fact manufactured, distributed, or dispensed the substance.” Id. § 204.101(7) (1991) (emphasis added) (recodified at Iowa Code § 124.101(6) (2007)). The parties agree, however, that Brown's disputed offenses did not involve an actual controlled substance. See PSR ¶¶51, 55; see also United States v. Brown, No. 06-CR-1028-LRR, 2007 WL 1498472, *4 (N.D.Iowa May 21, 2007) (explaining that the convictions at issue "involved a substance that was made in imitation of a controlled substance with an intent to deceive.”).