_____

No. 95-3880
_____

United States of America,     *
     *
     Plaintiff-Appellee,     *     Appeal from the United States
     *     District Court for the
     v.     *     Southern District of Iowa.
     *
Martin Perkins,     *
     *
     Defendant-Appellant.     *

_____

Submitted:  March 12, 1996

Filed:  August 23, 1996
_____

Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.
_____

HANSEN, Circuit Judge.

Martin Perkins was charged by grand jury indictment with one count of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and using and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c).  His first trial ended in a hung jury.  At his second trial, the jury found him guilty of the possession with intent to distribute charge but could not reach a verdict on the firearms charge.  The district court[1] sentenced Perkins to 135 months' confinement on the drug conviction, and the government elected to dismiss the firearms charge with prejudice.  Perkins appeals both his conviction and sentence.  We affirm.

_____

[1]The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

When viewed in the light most favorable to the verdict, the evidence at trial established that on the evening of December 4, 1994, a woman who identified herself as Keisha Bateman telephoned the Burlington, Iowa, police department to report that she was involved in a domestic dispute with the defendant at his apartment and that he had pointed a gun at her and assaulted her. She also told the police that the defendant was cutting up a quantity of crack cocaine and that he had a large stack of cash beside him as he did so.

Later that evening, police officers obtained and executed a state court search warrant for Perkins' apartment. Officers observed Perkins entering the living room from the bedroom. There were no other persons in the apartment, Perkins told the officers he was the only person living there, and there was but a single bed. Perkins was arrested on an outstanding Illinois warrant. A pager device, which Perkins said he wore because his sick grandmother often paged him, was taken from his person when it beeped. Stored in its memory and displayed on its readout were several telephone numbers, one of which was followed by the numbers 911. Testimony indicated those three numbers were a code used by crack addicts to indicate to a supplier that the addict needed drugs as soon as possible. In the bedroom, officers seized $5,723 in cash found in two socks in a footlocker; several pieces of crack individually wrapped in torn off corners of plastic sandwich bags, which were found in two sandwich bags within a plastic shopping bag located between the footlocker and the wall; and two razor blades in the pocket of a pair of pants. Officers found several plastic bags with the corners cut out in the kitchen and a razor blade with crack residue in the kitchen garbage. Also seized were various bills and letters addressed to the residence in the names of Martin Perkins, Clint Coleman, and Edward Perkins. A leather wallet with

two photo identification cards of the defendant (one of them a Michigan driver's license) was found in the same footlocker in the bedroom which held the cash, and a fully loaded Colt Delta Elite 10 mm pistol was found in a shoe in the closet of the bedroom.  A quantity of ammunition for the weapon was also located and seized.  While the search was being conducted, two men, one who identified himself as Edward Perkins and who said he lived there, and the other who would not identify himself, came to the door and wanted to enter.  Entry was denied.

Keisha Bateman turned out to be Kela Cooper who had used a false name when making the call to the police department.  She testified about the events which preceded her telephone call to the police including her observations of the defendant cutting up crack cocaine in his living room with a substantial amount of cash at hand.

## II.

Perkins appeals his conviction, contending that there is insufficient evidence to support the jury's verdict, that the government knowingly presented perjured testimony, that the district court erred in admitting evidence of his prior conviction for possession of crack cocaine, and that he received ineffective assistance of counsel at trial in violation of his Sixth Amendment right.  He appeals his sentence, challenging the enhanced statutory penalties for crack cocaine and the district court's determination of the quantity of drugs for which he should be held accountable.

### A.

The defendant's claim that the government knowingly presented false testimony at the defendant's second trial, if true, would violate the Due Process Clause.  United States v. Bagley, 473 U.S.

667, 678 (1985); Napue v. Illinois, 360 U.S. 264, 269 (1959); United States v. Martin, 59 F.3d 767, 770-71 (8th Cir. 1995).

The allegedly false testimony in this case involves the location where the defendant's Michigan driver's license was found during the search. At the defendant's first trial, Deputy Sheriff Salsberry identified a photograph as being taken during the search and as depicting a pair of white jeans with two razor blades and a photo ID laying on top of them. He testified that the razor blades and the ID had been found in the pockets of the jeans and placed on top of the jeans for photographing, that the ID was not the Michigan driver's license found in the wallet in the footlocker, and that neither the jeans nor the ID depicted in the photo had been seized. From his testimony, a fact finder could have concluded that three IDs of the defendant were found during the search, two (including the Michigan driver's license) in the wallet in the footlocker and one in the pocket of the jeans, but only the two in the wallet were seized. Defense counsel, working from an enlargement of the same photograph, clearly demonstrated in the cross-examination of the deputy that the photo ID depicted in the photograph on top of the jeans was in fact the same Michigan driver's license that the deputy's testimony indicated had been found in the defendant's wallet in the footlocker. The prosecutor so stipulated. The jury was unable to reach a verdict on the drug count.

At the second trial, Deputy Salsberry testified that from his recollection alone, he was unable to recall what type of ID he had found in the jeans but he was sure that it was not seized. He further testified that he "now knows" that the ID in the photograph is in fact the Michigan driver's license he found in the defendant's wallet and that he does not know how it came to be photographed with the jeans. The photograph was admitted with a stipulation by the parties that "[t]he government agrees that the

pants were not in the position originally located.  The government further agrees that the Michigan driver's license photographed with the pants was not found in those pants.  It was originally found in the wallet."  (Tr. of second trial at 72.)

All of this conflicting evidence and the inferences to be drawn from it, was put before the second jury, and nothing was withheld from it concerning the Michigan driver's license.  The same conflicting and impeaching evidence was before the jury as it determined the credibility of Deputy Salsberry and the weight to give to his other testimony.  The second jury convicted the defendant on the drug charge.

To prove prosecutorial use of false testimony that violates due process, Perkins must show:  (1) use of perjured testimony (2) that the prosecution knew or should have known was perjured, and (3) "a `reasonable likelihood' that the perjured testimony could have affected the jury's judgment."  Martin, 59 F.3d at 770 (quoting United States v. Nelson, 970 F.2d 439, 443 (8th Cir.), cert. denied, 506 U.S. 903 (1992)).  Our review of the facts convinces us that there was no attempt by the government to mislead the second jury through the use of false or perjured testimony.  The government held nothing back and laid all of the evidence about the Michigan driver's license before the second jury, including Deputy Salsberry's prior conflicting testimony.  The officer's testimony at both trials was that the Michigan driver's license was found in the wallet in the footlocker and that a third ID was found in the pants but not seized.  It is his testimony at the first trial that the ID in the photograph was the one taken from the pants and that it was not the Michigan driver's license found in the footlocker which was directly impeached and disproved by the enlarged photograph.  The government candidly informed the second jury that the Michigan license shown in the photograph was not found in the pants.  The government did not advance at the second

-5-

trial the impeached testimony given by the officer at the first trial that the ID card in the photograph was not the Michigan ID. Moreover, the officer's testimony at the second trial about the Michigan driver's license was consistent with the officer's contemporaneous written report and the search warrant inventory. While the officer's impeached first trial testimony would also tend to impeach his other testimony that the Michigan driver's license was initially found in the footlocker, we are unable to say on this record that his testimony at both trials about finding the Michigan ID in the wallet in the footlocker was in fact perjured, and that the government knew or should have known it. Indeed, at the second trial the stipulation between the parties included the sentence: "It was originally found in the wallet." No objection was made to that part of the stipulation by the defendant, and the stipulation was specifically agreed to in front of the jury.

The jury was fully informed about the discrepancies, contradictions, and inconsistencies in the officer's testimony and was free to determine whether the officer's testimony about where he found the Michigan ID was in fact true. While the inconsistency in the officer's testimony was serious and constituted excellent impeachment material for the defense, we are not convinced that the government was precluded from presenting his testimony as it did during the second trial. We agree with the district court's conclusion that no due process violation occurred. While no party is permitted to put on testimony that it knows or should know to be untrue, it is not improper to put on a witness whose testimony may be impeached. Truth determination is still the traditional jury function. As the experienced district court judge said, "what we have is a classic case of questions for the jury concerning credibility of witnesses." (Tr. of second trial at 12.)

**B.**

In a ruling on a motion in limine before the first trial, the district court granted the government's request pursuant to Federal Rule of Evidence 404(b) to introduce evidence that the defendant had possessed crack cocaine on June 2, 1994, about six months before his arrest on the charges in the indictment. The district court indicated that because of the way defense counsel had conducted voir dire, the evidence of the defendant's prior possession of crack cocaine would be admissible "to show knowledge of what crack cocaine is and knowledge that it is unlawful to have crack cocaine in one's possession." The district court further stated that the government had the burden of proving that the defendant knew he was in possession of a controlled substance and that the defendant knew it was unlawful to have crack cocaine. (Tr. of first trial at 11-13.) The district court further indicated that before the testimony about the prior possession would be received, the government would be required to state the purpose for which it was offered to the jury, and "the court will instruct the jury that it is received only for a limited purpose." (Id. at 12.) When the evidence about the prior possession was offered at the first trial, the defendant's Rule 404(b) objection was overruled, and the court specifically instructed the jury concerning the limited purposes for which they could use the evidence. (Id. at 120.) The instruction was not reiterated in the court's final instructions to the first jury because the defense specifically agreed that it not be given. (Id. at 211-12.) The first trial ended in a hung jury.

Before the start of the second trial, the court indicated that the limine ruling was the same. At the second trial, and over a specific Rule 404(b) objection, the government presented testimony from a police officer that on June 2, 1994, the defendant had been found in possession of eleven rocks of crack cocaine and that he

had been charged with possession of cocaine with intent to deliver as a result of that incident. (Tr. of second trial at 203.) The parties stipulated that the defendant pled guilty to simple possession as a result of the June 2, 1994, incident. (Id. at 299-300.) The second jury convicted the defendant of the possession of cocaine with intent to distribute charge. Perkins contends that the district court erred by admitting the evidence of his other crime and by failing to give the jury an instruction limiting the purposes for which the evidence could properly be considered.

In this circuit, "the trial court has broad discretion under [Rule 404(b)], and will be reversed only when the evidence `clearly has no bearing upon any of the issues involved.'" United States v. DeLuna, 763 F.2d 897, 913 (8th Cir.) (quoting United States v. Wagoner, 713 F.2d 1371, 1375 (8th Cir. 1983); internal citation omitted), cert. denied, 474 U.S. 980 (1985). Rule 404(b) clearly states that evidence of other acts or wrongs "is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such evidence is admissible for the limited and specific purposes listed in the Rule. In order to be admissible for any one of the specific purposes set forth in Rule 404(b) (i.e., motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake), the evidence of the prior wrong must be "(1) relevant to a material issue raised at trial, (2) similar in kind and close in time to the crime charged, (3) supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not the cause of prejudice that substantially outweighs its probative value." United States v. Rogers, No. 95-3660, 1996 WL 416721, at *2 (8th Cir. July 26, 1996). In this circuit, "Rule 404(b) is a rule of inclusion, prohibiting only that evidence that tends solely to prove the defendant's criminal disposition." United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir. 1995).

Our cases hold that generally the court should give the jury a limiting instruction informing them of the narrow purpose(s) for which the evidence was admitted.  United States v. Williams, 994 F.2d 1287, 1290 (8th Cir. 1993); United States v. Marion, 977 F.2d 1284, 1288 (8th Cir. 1992); Llach v. United States, 739 F.2d 1322, 1327 (8th Cir. 1984); United States v. Miller, 725 F.2d 462, 466 (8th Cir. 1984).  "Such an instruction diminishes the danger of any unfair prejudice arising from the admission of other acts."  United States v. Mays, 822 F.2d 793, 797 (8th Cir. 1987).

As indicated above, when the district court decided the motion in limine before the first trial, it said the prior act was admissible "to show knowledge of what crack cocaine is and knowledge that it is unlawful to have crack cocaine in one's possession."  Defendant makes much of the fact that the government has no burden of proving that the defendant knew that it is unlawful to possess crack cocaine, and argues that the court erred in admitting the prior act for that purpose.  While the defendant is correct in asserting that the government had no burden to prove that he actually knew it was unlawful to possess crack cocaine, the court admitted the prior act for other reasons as well.  The court correctly admitted the prior act as tending to show the defendant knew he was in possession of a controlled substance.  The court's marshaling instruction required the jury to find "[t]hat defendant Martin Perkins knew he was in possession of a controlled substance."  (Instr. No. 12.)  Knowledge acquired by the defendant as a result of the previous offense (i.e., what the controlled substance crack cocaine is) was probative of his knowing possession of crack cocaine at the time charged in the Indictment.  Additionally, the prior offense was admissible to show intent.  The defendant was charged with possession of cocaine with the intent to distribute.  Consequently, the government had to prove that he had the intent to distribute.

Both knowledge and intent are specific purposes for which prior acts can be admitted under Rule 404(b).  Hence, evidence concerning the June 2, 1994, possession conviction was relevant to issues raised at trial (i.e., the defendant's knowing possession of a controlled substance and his intent at the time of the present offense).  It was similar in kind and within six months' time of the charged conduct.  See United States v. Wiley, 29 F.3d 345, 351 (8th Cir.) (evidence of prior possession of cocaine base less than 20 months earlier admissible in prosecution for possession of cocaine base with intent to distribute), cert. denied, 115 S. Ct. 522 (1994); United States v. Sykes, 977 F.2d 1242, 1246 (8th Cir. 1992) (evidence of possession of controlled substance (PCP) in California admissible in prosecution in Minnesota for conspiracy to distribute PCP); United States v. Wint, 974 F.2d 961, 967 (8th Cir. 1992) ("evidence of an offense committed within the previous five years is reasonably close in time"), cert. denied, 506 U.S. 1062 (1993).  The defendant stipulated to the prior guilty plea so there certainly was sufficient evidence to permit the jury to find that the defendant committed the prior bad act.

Balancing the probative value of the prior conviction against any prejudicial impact it may have is within the broad discretion of the district court.  Here, the court minimized any such prejudice by carefully instructing the jury about when in their deliberations they could consider the prior act, if at all, and the limited purposes for which it could be considered.   Contrary to the impressions left with the court by the briefs and at oral argument that no limiting instruction of any kind with respect to the Rule 404(b) evidence had ever been given to the second jury, the district court did in fact give the jury a limiting instruction concerning the purposes for which the jury could consider the

evidence of the defendant's prior possession.[2]  Instruction No. 10A, "Prior Similar Acts," was given to the jury by the court before final arguments at the specific request of the defendant's trial counsel.  (Tr. of second trial at 250.)  It told the jury that they could not use the prior act as proof that the defendant did the acts charged in the indictment.  It also told them that the prior act could only be considered by them after they had determined from the other evidence in the case beyond a reasonable doubt that the defendant did the act or acts alleged in the count under consideration, and then they could only consider it in determining "the

---

[2]Neither the defendant's appellate counsel nor the attorney for the government who argued before us was counsel at trial. The appellant's brief contained the following statements:

> Although the district court had stated it would give a limiting instruction and have the government inform the jury what purpose the prior conviction was being presented for, it failed to do either.  (TT2 p. 198).  The court's failure to give a limiting instruction improperly prejudiced the jury requiring that Defendant receive a new trial.

(Appellant's Br. at 21.)

At no place in the appellant's brief is mention made that the district court included a Rule 404(b) limiting instruction in its formal final written instructions to the jury.  At no place in the government's brief (which was authored by the government's trial counsel) are we informed that such a limiting instruction was in fact given.  The instructions given by the district court were not contained in the clerk's record on appeal, and neither side filed an appendix.  The tape recording of the oral argument demonstrates that the questions asked of counsel by the court all assumed that no limiting instruction of any kind was ever given to the jury, and that neither advocate told us a limiting instruction was in fact given.  After reading the entire transcript, however, we believed the district court had given a limiting instruction.  (See Tr. of second trial at 250, 301, 304.)  On our own motion, we obtained the district court's instructions from the district court and found that a limiting instruction had in fact been given to the jury.

state of mind or intent with which the defendant actually did the act or acts charged in the counts of the

Indictment."  (Instr. No. 10A.)  We do not believe the district court abused its broad discretion by admitting the very recent prior bad act for the limited purposes it explained to the jury.  See United States v. Escobar, 50 F.3d 1414, 1421-22 (8th Cir. 1995); United States v. Gustafson, 728 F.2d 1078, 1084 (8th Cir.), cert. denied, 469 U.S. 979 (1984).

The defendant seems to argue that the district court should have, sua sponte, given the jury a limiting instruction at the point in the trial when the Rule 404(b) evidence was admitted, and that it was prejudicial error not to do so.  (Appellant's Br. at 22.)  We have never required a district court to do so.  In fact, we have never found it to be plain error when a court does not give a limiting instruction of any kind sua sponte with respect to Rule 404(b) type evidence.  United States v. McGuire, 45 F.3d 1177, 1188 (8th Cir.) ("The trial court need not issue a prior crimes limiting instruction sua sponte."), cert. denied, 115 S. Ct. 2558 (1995); Williams, 994 F.2d at 1290; United States v. Milham, 590 F.2d 717, 722 (8th Cir. 1979); United States v. Conley, 523 F.2d 650, 654 n.7 (8th Cir. 1975) ("In the absence of a specific defense request, however, no limiting instruction is required where the evidence was relevant to an issue in the case." (citations omitted)).  In this case, the court gave a limiting instruction after the defense counsel requested it.  The defendant complains that the district court did not follow exactly the procedure that it indicated it would when ruling on the motion in limine before the first trial.  We see no prejudice to the defendant in this respect.  When the district court did not give a limiting instruction at the precise time the defendant may have expected it, counsel could surely have asked for one or reminded the district judge of what he said he would do.  What is significant is that the jury was, in fact, properly instructed about the limitations imposed on the evidence of the defendant's prior act.  Exactly when to so instruct is surely a matter within the district court's broad discretion, and

we respectfully decline to micro-manage how that discretion should be exercised.

## C.

The appellant contends that the evidence considered by the jury was insufficient to support his conviction for possessing cocaine with the intent to distribute it. "The standard of review of an appeal concerning sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly." United States v. Burks, 934 F.2d 148, 151 (8th Cir. 1991). In assessing this argument, we are required to view the evidence in the light most favorable to the verdict and to give the government all reasonable inferences to be drawn therefrom. United States v. Suppenbach, 1 F.3d 679, 681-82 (8th Cir. 1993).

In order to prove the possession of cocaine with the intent to distribute charge against the defendant, the government had to prove that he knowingly possessed cocaine with the intent to distribute. United States v. Matra, 841 F.2d 837, 840 (8th Cir. 1988). Possession may be either actual or constructive. United States v. Townley, 942 F.2d 1324, 1325 (8th Cir. 1991). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." United States v. Erdman, 953 F.2d 387, 389 (8th Cir.), cert. denied, 505 U.S. 1211 (1992).

The defendant argues that the discrepancies in and impeachment of Deputy Salsberry's testimony, coupled with the alleged incredibility of Kela Cooper's testimony, together with the mishandling of the Michigan driver's license at the scene of the crime, all add up to an insufficiency of the evidence. Kela Cooper, who testified that she was the person who called the police and gave them a false name and false social security number, testified that she observed the defendant in the living room of the

apartment cutting up crack cocaine for sale and that he had what she estimated to be $1,000 in cash in front of him as he did so. Kela Cooper is herself a convicted cocaine dealer and burglar who had been romantically spurned by the defendant, and who had expressed a desire to get revenge on him for his involvement with another woman. All of the reasons Kela Cooper had for not telling the truth and for "setting up" the defendant were laid in front of the jury. Whether or not her testimony was credible was an issue for the jury to decide. Rogers, 1996 WL 416721, at *2 (citing United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996)); United States v. Hudson, 717 F.2d 1211, 1213 (8th Cir. 1983) ("It is for the jury, not a reviewing court, to evaluate the credibility of witnesses and to weigh their testimony."). Her testimony was corroborated by the incriminating items (cash, plastic bags, crack, loaded weapon, razorblade with cocaine residue, pager with 911 coding) found by the officers during the search at a time when the defendant was physically in the apartment and when both direct and circumstantial evidence (including a listing of the apartment as his address in the local telephone book) showed he resided there. After a careful reading of the transcript, we conclude that the evidence is more than sufficient to support the jury's verdict that the defendant knowingly possessed cocaine with the intent to distribute it under either a constructive or actual possession theory.

**D.**

At oral argument the appellant conceded that his claim of ineffective assistance of counsel should be made in a later proceeding pursuant to 28 U.S.C. § 2255. We agree the claim is premature. See United States v. Thomas, 992 F.2d 201, 204 (8th Cir. 1993).

## E.

Perkins attacks 21 U.S.C. § 841(a) as being void for vagueness because it fails to distinguish between cocaine and cocaine base. This argument is foreclosed by this court's decisions in United States v. House, 939 F.2d 659, 664 (8th Cir. 1991), and United States v. Jackson, 64 F.3d 1213, 1219 (8th Cir. 1995), cert. denied, 116 S. Ct. 966 (1996). His argument that the rule of lenity should apply to equalize the penalties imposed for cocaine and cocaine base is likewise foreclosed by Jackson. See 64 F.3d at 1219-20. We reject his request that this panel "review and reverse its prior decision in United States v. Jackson. . ." (Appellant's Br. at 6.) The suggestion for rehearing by the court en banc was denied in Jackson, see 64 F.3d at 1213, and one panel of the court cannot reverse another panel. Brown v. First Nat'l Bank in Lenox, 844 F.2d 580, 582 (8th Cir. 1988).

## F.

Finally, the appellant asserts that the district court committed error when it converted one-third of the $5,723 in cash seized from the two socks ($4,000 in mostly $20 bills in one sock, and $1,723 in the second sock) in the footlocker into a quantity of cocaine for sentencing determination purposes. We review the sentencing judge's drug quantity determination for clear error. United States v. Newton, 31 F.3d 611, 614 (8th Cir. 1994). The presentence investigation report (PSIR) attributed the 32.05 grams of cocaine base seized at the apartment to the defendant. In addition, relying on information provided by the Burlington, Iowa, police department that crack cocaine was sold in that community for about $1,400 per ounce, the PSIR converted all of the $5,723 seized into its crack cocaine equivalent of 115.89 grams ($1,400 per ounce = $49.25 per gram. $5,723 divided by $49.25 = 115.89 grams of cocaine base.). Adding this calculated equivalent quantity and the

-16-

actual quantity seized together gave a total quantity for sentencing guideline purposes of 147.94 grams, which resulted in a recommended offense level of 32. See United States Sentencing Commission, Guidelines Manual, § 2D1.1(c)(4) (Nov. 1994) (50-150 grams of cocaine base = level 32). The defendant objected to using the cash seized from the footlocker to determine the quantity of cocaine base he should be held accountable for, arguing that the evidence linking the money to him rested on the impeached testimony of Deputy Salsberry that he found the defendant's wallet in the same footlocker. The district court, after hearing argument from both sides, concluded that the government had not proved that all of the 115.89 grams calculated from the $5,723 were attributable to the defendant. The district court reasoned that because the money and the crack were "in the same vicinity, I find that at least a third of the money can reasonably be attributed to crack cocaine." (Sent. Tr. at 10-11.) The court reasoned further that a third of the money represented approximately 40 grams of cocaine base which, when added to the 32.05 grams seized, totaled at least 72 grams attributable to the defendant. Seventy-two grams falls within the offense level 32 range for 50-150 grams of cocaine base. The defendant's criminal history score was 3, placing him in Criminal History Category II, resulting in a guideline range of 135-168 months of confinement. The court imposed a sentence of 135 months' confinement, no fine, 5 years of supervised release, and a $50 special assessment.

Defendant contends that the district court's use of one-third of the money as representing crack cocaine proceeds was error. We have said that we will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made. United States v. Simmons, 964 F.2d 763, 773 (8th Cir.), cert. denied, 506 U.S. 1011 (1992). Here the PSIR disclosed that Perkins was unemployed and had been so for a year before his arrest. He claimed he had no assets. The PSIR revealed

-17-

some $2,400 in debt.  His adjusted gross income for 1991 was $1,559, for 1992 was $2,209, and for 1993 was $2,767.  The seized cocaine base was located between the footlocker containing the cash and the wall.  The defendant was observed with a sizable amount of cash (estimated at $1,000) at the time he was cutting up crack cocaine just a few hours before his arrest.

Here, the district court approximated the quantity of cocaine attributable to the defendant pursuant to application note 12 to USSG § 2D1.1 ("where . . . the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance.  In making this determination, the court may consider . . . the price generally obtained for the controlled substance . . .").  Given the defendant's lack of employment for the year before the offense and his minimal income in the three years before that, and the fact he was observed with both cash and crack shortly before the search, we cannot say that the district court was clearly erroneous when it held that only one-third of the seized cash would be converted to its cocaine equivalency.  Some line drawing is necessary when approximations are made.  Even if only 20 percent of the money was drug proceeds, it would still result in an additional 23 grams which, when added to the 32.05 grams actually seized, would still put the defendant at a base offense level of 32.  We believe the district court's conservative approach was correct, and its quantity determination is affirmed.

### III.

Accordingly, for the reasons stated, the judgment of the district court is affirmed.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.